GLANCY PRONGAY & MURRAY LLP
Lionel Z. Glancy (#134180)
Marc L. Godino (#182689)
Danielle L. Manning (#313272)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile:  (310) 201-9160
Email:  mgodino@glancylaw.com
          info@glancylaw.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELISSA RYAN and DANIEL RYAN, individually and on behalf of all others,<br><br>             Plaintiffs,<br><br>       v.<br><br>QUEST DIAGNOSTICS, INC.; OPTUM360 SERVICES, INC.; AMERICAN MEDICAL COLLECTION AGENCY<br><br>             Defendants. | Case No.:   **'19 CV 1098 JM   BLM**<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>**(1) Negligence (28 U.S.C. § 1332);**<br><br>**(2) Violations of Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq*.); and**<br><br>**(3) Declaratory Judgment**<br><br>**(4) The Confidentiality of Medical Information Act, Cal. Civil Code §§ 56, *Et Seq*.**<br><br>**(5) California Customer Records Act, Cal. Civil Code §§ 1798.81.5 & 1798.82**<br><br>**(6) Breach Of Contract**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Melissa Ryan and Daniel Ryan ("Plaintiffs"), individually and on behalf of all others similarly situated, files this Consolidated Class Action Complaint against Quest Diagnostics Inc. ("Quest Diagnostics"), Optum360 LLC ("Optum360"), American Medical Collection Agency ("AMCA") (collectively, "Defendants"), and alleges the following based on personal knowledge, the investigation of counsel, and information and belief.

## **INTRODUCTION**

1.     Plaintiffs, and the other Class Members are customers of Defendant Quest Diagnostics whom entrusted their sensitive and HIPAA-protected medical information ("PHI") and personal identifying information ("PII"), to Quest Diagnostics. Quest Diagnostics and the other Defendants betrayed Plaintiffs' trust by failing to properly safeguard and protect their PHI and PII and exposing their personal information to unauthorized parties due to Defendants' negligence.

2.     Defendant, Quest Diagnostics is the leading medical laboratory services provider in the country and is regularly entrusted with the storage, and security of its customers' PII and PHI.

3.     On or about June 3, 2019, Quest Diagnostics informed the public of a data breach effecting nearly 12 million of its customers, including Plaintiffs and putative Class members' PII and PHI (the "Data Breach").

4.     As a result of the Data Breach, Plaintiffs and other Class Members will bear an immediate and heightened risk of all manners of identity theft.

5.     Defendants were negligent in taking the necessary precautions required to safeguard and protect Plaintiffs' and Class Members' PII and PHI from cybercriminals, and also breached its duty to timely and adequately disclose the Data Breach.

6.     Furthermore, Defendants are in violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"), California Medical

CLASS ACTION COMPLAINT

Information Act, Cal. Civ. Code §§ 56, *et seq,* and California Customer Records Act, Cal. Civil Code §§ 1798.81.5 & 1798.82 for failing to take reasonable measures in protecting Plaintiffs' and the Class Members' PII and PHI.

7.    Plaintiffs on behalf of themselves and the other Class Members, seeks actual damages, economic damages, injunctive relief, and attorneys' fees, litigation expenses, and costs.

## THE PARTIES

8.    Quest Diagnostics is a Delaware corporation with its principal place of business in Secaucus, New Jersey.  Quest Diagnostics has at least 33 facilities in the State of California.

9.    Optum360 is a Delaware corporation with its principal place of business in Eden Praire, Minnesota.  Optum360 is a revenue cycle management provider for Quest Diagnostics.

10.    AMCA is a Florida corporation with a principal place of business in Elmsford, New York.  AMCA is a billing collection vendor for Quest Diagnostics.

11.    Melissa Ryan is an individual consumer residing in San Diego County, California.  Ms. Ryan used Quest Diagnostics' services several times over the past few years.

12.    Daniel Ryan is an individual consumer residing in San Diego County, California.  Mr. Ryan used Quest Diagnostics' services several times over the past few years.

13.    As a result of the Data Breach, Plaintiffs have suffered a loss of privacy, is at a continuous high risk of identity theft or other types of financial fraud, and will continue to suffer from the increased financial and mental costs necessary to consistently monitor and guard against the aforementioned risks.

1

## JURISDICTION AND VENUE

2      14.     This Court has jurisdiction over the claims in this action pursuant to

3  28 U.S.C. § 1332(d) because there are more than 100 Class Members, at least one

4  Class Member is a citizen of a state that is diverse from Defendants and the amount

5  in controversy exceeds $5 million, exclusive of interest and costs.

6      15.     This Court has personal jurisdiction over Defendants because

7  Defendants conduct business in California, and has sufficient minimum contacts

8  with California to satisfy Due Process standards.

9      16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)

10  because a substantial part of the events or omissions giving rise to Plaintiffs'

11  claims occurred in this District.

12

## FACTUAL ALLEGATIONS

13      17.     Quest Diagnostics is the world's leading provider of medical

14  diagnostic testing services.

15      18.     As part of its business practice, Quest Diagnostics and Optum360

16  collects and stores PII and PHI from its customers.

17      21.     On June 3, 2019, Quest Diagnostics publicly announced that on May

18  14, 2019, AMCA alerted Quest Diagnostics and Optum360 of a massive data

19  breach compromising the PII and PHI of nearly 12 million Quest Diagnostics and

20  Optum360 customers.

21      22.     Quest further disclosed that between August 1, 2018 and March 30,

22  2019, an unauthorized user had access to AMCA's system that contained

23  information that AMCA had received from Quest Diagnostics, and information

24  that AMCA collected itself including credit card numbers, bank account

25  information, medical information, social security numbers and other personal

26  information.

27

28

23.    Despite the fact that Quest Diagnostics knew of the Data Breach as of May 14, 2019, and despite the fact that AMCA knew of the Data Breach even earlier, neither Quest Diagnostics or AMCA took any steps to inform the public or its customers whose PII and PHI was breached until June 3, 2019.

24.    The fact that the Data Breach occurred and that cybercriminals obtained Plaintiffs' and class members' PII and PHI makes it likely that private financial and medical information will or has been disclosed already on the "dark web."

25.    Defendants had obligations created by HIPAA, to keep customer PII and PHI confidential and to protect it from unauthorized disclosures.  In fact,  in its Notice of Privacy Practices, Quest Diagnostics acknowledges that it is subject to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). <http://questdiagnostics.com/home/privacy-policy/notice- privacypractices.  html> (last visited June 10, 2019).

26.    Customers provided their PII and PHI to Quest Diagnostics with the understanding that it promises patients that it will keep their PII and PHI confidential, stating that Quest Diagnostics is "committed to protecting the privacy of your identifiable health information." *Id*.

27.    By failing to implement adequate safeguards and quality-control mechanisms, Defendants enabled data thieves to access the PII and PHI of persons who used their services, at the directions of their medical providers.

28.    Had Defendants took reasonable steps to protect customers' PII and PHI, this Data Breach would not have occurred or it would not have lasted as long as it did, and the harms to Plaintiffs and class members would have been mitigated.

29.    Defendants are jointly and severally liable for all consequences of the Data Breach.

CLASS ACTION COMPLAINT

30.   As a result of the Data Breach, and for the rest of Plaintiffs' and other Class Members' lives, they will bear an immediate and heightened risk of all manners of identity theft.

## CLASS ACTION ALLEGATIONS

31.   Plaintiffs bring these claims pursuant to Federal Rule of Civil Procedure 23 on behalf of a Nationwide Class and a California Sub-Class of similarly situated persons, which she proposes to be defined as follows:

a.    **Nationwide Class:**  All persons in the United States whose PII and PHI was maintained on the AMCA systems that were compromised as a result of the breach announced by Quest Diagnostics on or around June 3, 2019.

b.    **California Sub-Class:** All persons in the State of California whose PII and PHI was maintained on the AMCA systems that were compromised as a result of the breach announced by Quest Diagnostics on or around June 3, 2019.

34.   Excluded from the above classes are all attorneys for the class, officers and members of Defendants, including officers and members of any entity with an ownership interest in Defendants, any judge who sits on the case, and all jurors and alternate jurors who sit on the case.

35.   **Numerosity:** The proposed class contains thousands of individuals dispersed throughout the United States.  Joinder of all members is impracticable. Class Members can be identified through Defendants' records.

36.   **Commonality:** Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual Class Members.  Common questions include:

a.    Whether and to what extent Defendants had a duty to protect the class members' PII and PHI;

b. Whether Defendants breached its duty to protect the Class Members' PII and PHI;

c. Whether Defendants' data security systems prior to the Data Breach met the requirements of laws including, for instance, HIPAA.

d. Whether Defendants disclosed Class Members' PII and PHI.

e. Whether Defendants timely, accurately, and adequately informed class members that their PII and PHI had been compromised;

f. Whether Class Members are entitled to damages; and

g. Whether Class Members are entitled to injunctive relief.

37. **Typicality:.** Plaintiffs' claims are typical of the claims of members of the proposed classes because, among other things, Plaintiffs and Class Members sustained similar injuries as a result of Defendants' uniform wrongful conduct; Defendants owed the same duty to each Class Member; and their legal claims arise from the same conduct by Defendants.

38. **Adequacy**: Plaintiffs will fairly and adequately protect the interests of the proposed class. Her interests do not conflict with the Class Members' interests. Plaintiffs have retained class counsel experienced in class action litigation to prosecute this case on behalf of the class.

39. **Rule 23(b)(3)**. In addition to satisfying the prerequisites of Rule 23(a), Plaintiffs satisfy the requirements for maintaining a class action under Rule 23(b)(3). Common questions of law and fact predominate over any questions affecting only individual Class Members and a class action is superior to individual litigation. The amount of damages available to individual Class Members is insufficient to make litigation addressing Defendants' conduct economically feasible in the absence of the class action procedure. Individualized litigation also

presents a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

40.    **Rule 23(b)(2)**.  Plaintiffs also satisfy the requirements for maintaining a class action under Rule 23(b)(2). Defendants have acted or refused to act on grounds that apply generally to the proposed classes, making final declaratory or injunctive relief appropriate with respect to the proposed classes as a whole.

41.    **Rule 23 (c)(4)**.    Plaintiffs also satisfy the requirements for maintaining a class action under Rule 23(c)(4). The claims of Class Members are composed of particular issues that are common to all Class Members and capable of class wide resolution that will significantly advance the litigation.

**CAUSES OF ACTION**
<u>**First Cause of Action**</u>

**(Negligence – On Behalf of All Classes)**

42.    Plaintiffs re-allege and incorporates by reference all prior allegations as if fully set forth herein.

43.    This cause of action is brought on behalf of the nationwide class and California Sub-Class.

44.    Quest Diagnostics is the leading medical laboratory services provider in the country and is regularly entrusted with the storage, and security of its customers PII and PHI.  As such, Quest Diagnostics had full knowledge of the sensitivity of the PII and PHI and the types of harm that Plaintiffs and Class Members could and would suffer if the PII and PHI were wrongfully disclosed. Additionally, as an entity engaged in the business of storing and safeguarding PII and PHI, it had a duty to Plaintiffs and each Class Member to exercise reasonable

care in holding, safeguarding and protecting that information. Plaintiffs and the Class Members were the foreseeable victims of any inadequate safety and security practices. Plaintiffs and the other Class Members had no ability to protect the data that was in Quest Diagnostics' possession.

45.     Quest Diagnostics' duty to the Plaintiffs and other Class Members included, *inter alia*, establishing processes and procedures to protect the PII and PHI from wrongful disclosure and ensuring that it and its business partners, with whom they shared such data, maintained up to date Internet security measures.

46.     In addition, Quest Diagnostics had a duty to timely and adequately disclose to Plaintiffs and the other Class Members that their PII and PHI had been compromised. Such timely disclosure was necessary to allow Plaintiffs and the other Class Members to (i) purchase identity protection services; (ii) monitor their bank accounts, credit cards and other financial accounts; and (iii) take other steps to protect against identity theft and the fraudulent use of their PII and PHI by third parties.

47.     Quest Diagnostics admitted that Plaintiffs' and the other Class Members' PII and PHI was wrongfully disclosed as a result of the Data Breach. This Data Breach could very likely have been prevented if Quest Diagnostics had been diligent in protecting customers' PII and PHI.

48.     Quest Diagnostics breached its duty to Plaintiffs and the Class Members by failing to maintain proper security measures, policies and procedures, and training. Quest Diagnostics failed to timely notify Plaintiffs and the Class Members of the Data Breach, waiting approximately three weeks from discovery of the hack to publicly announcing the breach. Plaintiffs and the Class Members have been harmed as a direct and proximate result of Quest Diagnostics' negligence. Plaintiffs and the Class Members will continue to be harmed as a direct and proximate result of Quest Diagnostics' negligence.

49.     As a result of Quest Diagnostics' negligence, Plaintiffs and the Class Members have suffered and will continue to suffer damages and injury including, but not necessarily limited to: a) out-of-pocket costs associated with procuring identity protection and restoration services; b) in the event of future identity theft, out-of-pocket costs associated with repairing credit, reversing fraudulent charges, and other harms; and c) lost productivity and enjoyment as a result of time spent monitoring, addressing and correcting future consequences of the Data Breach.

50.     Plaintiffs and the Class Members are entitled to money damages for all out-of-pocket costs caused by Quest Diagnostics' negligence.  Plaintiffs also seek reasonable attorneys' fees and costs under the applicable law, including Federal Rule of Civil Procedure 23 and California Code of Civil Procedure § 1021.5.

### Second Cause of Action
**(Violation of Unfair Competition Law California Business and Professional Code Section 17200, *et seq.* – On Behalf of Plaintiffs and the California Sub-Class)**

51.     Plaintiffs re-allege and incorporates by reference all prior allegations as if fully set forth herein.

52.     Quest Diagnostics engaged in unfair and unlawful business practices in violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL").  Quest Diagnostics' acts, omissions, and conduct constitute unfair and unlawful business practices under the UCL.

53.     Quest Diagnostics' practices were unlawful and in violation of Civil Code section 1798.81.5 of the Customer Records Act ("CRA") because Quest Diagnostics failed to take reasonable measures in protecting Plaintiffs' and the Class Members' PII and PHI.

54.     Quest Diagnostics' practices were unlawful and in violation of Civil

Code section 1798.82 of the CRA because Quest Diagnostics failed to timely disclose that Plaintiffs' and the Class Members' PII and PHI had been breached.

55.    Quest Diagnostics' acts, omissions, and conduct also constitute "unfair" business acts or practices because they offend public policy and constitute immoral, unethical, and unscrupulous activities that caused substantial injury, to Plaintiffs, Class Members, and others.  The gravity of harm resulting from Quest Diagnostics' conduct outweighs any potential benefits attributable to the conduct and there were reasonably available alternatives to further Quest Diagnostics' legitimate business interests.

56.    Quest Diagnostics has exclusive knowledge about the extent of the Data Breach, including during the days and weeks following the Data Breach.

57.    As a direct and proximate result of Quest Diagnostics' unlawful and unfair business practices as alleged herein, Plaintiffs and the Class Members have suffered injury in fact.  Plaintiffs and the class have been injured in that their PII and PHI has been compromised, subject to identity theft, identity fraud, and/or is at risk for future identity theft and fraudulent activity on their financial accounts.

58.    As a direct and proximate result of Quest Diagnostics' unlawful and unfair business practices as alleged herein, Plaintiffs and Class Members already suffer from identity theft, identity and financial fraud, and/or a continuing increased risk of identity theft and financial fraud due to the compromise, publication, and/or unauthorized use of financial PII and PHI.  Plaintiffs and the Class Members have also been injured by, among other things: (1) the loss of the opportunity to control how their PII and PHI is used; (2) the compromise, publication, and/or theft of their PII and PHI; (3) out-of-pocket costs associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of financial accounts; (4) lost opportunity costs associated with effort expended and the loss of productivity from addressing and attempting to

mitigate the actual and future consequences of the breach, including but not limited to efforts spent researching how to prevent, detect, contest and recover from identity fraud; (5) costs associated with the ability to use credit and assets frozen or flagged due to credit misuse, including complete credit denial and/or increased costs to use credit, credit scores, credit reports and assets; (6) unauthorized use of compromised PII to open new financial accounts; (7) tax fraud and/or other unauthorized charges to financial accounts and associated lack of access to funds while proper information is confirmed and corrected; (8) the continued risk to their PHI  which remain in Quest Diagnostics' possession and are subject to further breaches so long as Quest Diagnostics fails to undertake appropriate and adequate measures to protect the PII and PHI in its possession; and (9) future costs in terms of time, effort and money that will be expended to prevent, detect, contest, and repair the impact of the PII and PHI compromised as a result of the Data Breach for the remainder of the Plaintiffs' and the Class Members' lives.

59.   As a result of Quest Diagnostics' violations of the UCL, Plaintiffs and the Class Members are entitled to injunctive relief, including, but not limited to an order that Quest Diagnostics: (1) engage third party security internet security testers as well as internal security personnel to conduct testing consistent with prudent industry practices, including simulated attacks, penetration tests, and audits on Quest Diagnostics' internet security measures on a periodic basis; (2) engage third party internet security testers and internal personnel to run automated security monitoring of Quest Diagnostics' websites and databases consistent with prudent industry practices; (3) audit, test, and train its internal internet security personnel regarding any new or modified procedures; (4) conduct regular website, internet, and online database scanning and security checks consistent with prudent industry practices; (6) periodically conduct internal training and education to inform internal personnel how to identify and contain a data breach when it occurs

and what to do in response to a breach consistent with prudent industry practices; (7) receive periodic compliance audits by a third party regarding the security of the Quest Diagnostics' online websites and databases it uses to store the PII and PHI of its customers; (8) provide ongoing identity theft protection, monitoring, and recovery services to Plaintiffs and Class Members.  Because of Quest Diagnostics' unlawful and unfair business practices, Plaintiffs and the Class Members are entitled to relief, including attorneys' fees and costs, restitution, declaratory and injunctive relief. Plaintiffs also seek reasonable attorneys' fees and costs under applicable law including Federal Rule of Civil Procedure 23 and California Code of Civil Procedure § 1021.5.

## Third Cause of Action
### (Declaratory Judgment – On Behalf of All Classes)

60.    Plaintiffs re-allege and incorporates by reference all prior allegations as if fully set forth herein.

61.    As set forth above, Plaintiffs and the Class Members have valid claims against Quest Diagnostics for negligence and violations of the UCL.  An actual controversy has arisen in the wake of Quest Diagnostics' Data Breach regarding Quest Diagnostics' current obligations to provide reasonable internet security measures to protect the PII of Plaintiffs and the Class Members.

62.    Plaintiffs seek a declaration that to comply with its existing obligations, Quest Diagnostics must implement specific additional, prudent industry security practices, as outlined below, to provide reasonable protection and security to the PII and PHI of Plaintiffs and the Class Members.  Specifically, Plaintiffs and the Class Members seek a declaration that (a) Quest Diagnostics' existing internet security measures do not comply with its obligations, and (b) that to comply with its obligations, Quest Diagnostics must implement and maintain reasonable internet security measures on behalf of Plaintiffs and the Nationwide

Class and the California Sub-Class, including, but not limited to: (1) engaging third party security internet security testers as well as internal security personnel to conduct testing consistent with prudent industry practices, including simulated attacks, penetration tests, and audits on Quest Diagnostics' internet security measures on a periodic basis; (2) engaging third party internet security testers and internal personnel to run automated security monitoring of Quest Diagnostics' websites and databases consistent with prudent industry practices; (3) audit, test, and train its internal internet security personnel regarding any new or modified procedures; (4) conducting regular website, internet, and online database scanning and security checks consistent with prudent industry practices; (6) periodically conducting internal training and education to inform internal personnel how to identify and contain a data breach when it occurs and what to do in response to a breach consistent with prudent industry practices; (7) receiving periodic compliance audits by a third party regarding the security of the Quest Diagnostics' online websites and databases it uses to store the PII and PHI of its customers; (8) providing ongoing identity theft protection, monitoring, and recovery services to Plaintiffs and Class Members.

63.    The Plaintiffs and each Class Member is entitled to a declaration of rights providing that Quest Diagnostics is obligated, pursuant to terms established by the Court, to reimburse said individuals for any and all future harm caused by the Data Breach.

## Fourth Cause of Action
### Violation of the California Medical Information Act (On behalf of Plaintiffs and the California Sub-Class)

64.    Plaintiffs re-allege and incorporates by reference all prior allegations as if fully set forth herein.

65.    California's Confidential Medical Information Act was enacted to

protect, among other things, the release of confidential medical information without proper authorization. *See* California Medical Information Act, Cal. Civ. Code §§ 56, *et seq.* ("CMIA"). To that end, the CMIA prohibits entities from negligently disclosing or releasing any person's confidential medical information. *See* Cal. Civ. Code § 56.36 (2013). The CMIA also requires that an entity that "creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall do so in a manner that preserves the confidentiality of the information contained therein." Civ. Code § 56.101(a).

66.    As alleged herein, Defendants negligently disclosed and released Plaintiffs' and California Sub-Class Members' Sensitive Information by failing to implement adequate security protocols to prevent unauthorized access to PII and PHI, failing to maintain an adequate electronic security system to prevent data breaches, failing to employ industry standard and commercially viable measures to mitigate the risks of any data breach, and otherwise failing to comply with HIPAA data security requirements.

67.    As a direct and proximate result of Defendants' negligence, they disclosed and released Plaintiffs' and California Sub-Class Members' PII and PHI to hackers.

68.    Accordingly, Plaintiffs seek to recover actual, nominal (including $1000 nominal damages per disclosure under Cal. Civ. Code § 56.36(b)), and statutory damages (including under § 56.36(c)) where applicable, together with reasonable attorneys' fees and costs.

## Fifth Cause of Action
### Violation of the California Customer Records Act, Cal. Civil Code §§ 1798.81.5 & 1798.82
### (On behalf of Plaintiffs and the California Sub-Class)

69.    Plaintiffs re-allege and incorporates by reference all prior allegations

as if fully set forth herein.

70.    "[T]o ensure that personal information about California residents is protected," the California legislature enacted Civil Code section 1798.81.5, which requires that any business that "owns or licenses personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

71.    The PII and PHI taken in the Data Breach fits within the definition of "Personal information" in Civil Code section 1798.80.

72.    Plaintiffs and other Class Members provided their personal information to Defendants in order to get medical diagnoses. These patients qualify as "Customer[s]" as defined in Civil Code section 1798.80.

73.    By failing to implement reasonable measures to protect the PII and PHI in their possession, Defendants violated Civil Code section 1798.81.5.

74.    By failing to promptly notify all who were affected by the Data Breach that their PII and PHI had been acquired (or was reasonably believed to have been acquired) by hackers, Defendants violated Civil Code Section 1798.82.

75.    87. As a direct or proximate result of Defendants' violations of Civil Code Sections 1798.81, 1798.81.5, and 1798.82, Plaintiffs and Class Members were (and continue to be) injured and have suffered (and will continue to suffer) the damages described in this Class Action Complaint.

76.    Defendants' violations of Civil Code Sections 1798.81, 1798.81.5, and 1798.82 were, at a minimum, reckless.

77.    In addition, by violating Civil Code Sections 1798.81, 1798.81.5, and 1798.82, Defendants "may be enjoined" under Civil Code Section 1798.84(e).

78.    Defendants' violations of Civil Code Section 1798.81.5 and 1798.82

also constitute an unlawful acts or practices under California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200 et seq., which affords the Court discretion to enter whatever orders may be necessary to prevent future unlawful acts or practices.

79.     Plaintiffs request that the Court enter an injunction requiring Defendants to implement and maintain reasonable security procedures, including, but not limited to: (1) ordering that Defendants utilize strong industry standard encryption algorithms for encryption keys that provide access to stored Sensitive Information; (2) ordering that Defendants implement the use of encryption keys in accordance with industry standards; (3) ordering that Defendants, consistent with industry standard practices, engage third party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests and audits on systems belong to Defendants and all others with whom they share Sensitive Information, on a periodic basis; (4) ordering that Defendants engage third-party security auditors and internal personnel, consistent with industry standard practices, to run automated security monitoring; (5) ordering that Defendants audit, test and train their security personnel regarding any new or modified procedures; (6) ordering that Defendants, consistent with industry standard practices, segment consumer data by, among other things, creating firewalls and access controls so that if one area of Defendants' computer system is compromised, hackers cannot gain access to other portions of their systems; (7) ordering that Defendants purge, delete, destroy in a reasonable secure manner Sensitive Information no longer necessary; (8); ordering that Defendants, consistent with industry standard practices, conduct regular database scanning and security checks; (9) ordering that Defendants, consistent with industry standard practices, periodically conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to

CLASS ACTION COMPLAINT
16

do in response to a breach; and (10) ordering that Defendants implement industry best practices data security systems.

80.    Plaintiffs further request that the Court require Defendants to identify and notify all members of the nationwide Class who have not yet been informed of the Data Breach.

81.    Plaintiffs and the Class are entitled to actual damages in an amount to be determined at trial under Civil Code Section 1798.84.

82.    Plaintiffs and the Class also are entitled to an award of attorney fees and costs under Civil Code Section 1798.84.

**Sixth Cause of Action**
**Breach of Contract (On Behalf of All Classes**

83.    Plaintiffs re-allege and incorporates by reference all prior allegations as if fully set forth herein.

84.    Plaintiffs and Class members entered into a contract with Defendants and Defendants' privacy policy are part of the contract.

85.    Plaintiffs and Class members performed substantially all that was required of them under their contract with Defendants, or they were excused from doing so.

86.    Defendants failed to perform its obligations under the contract, including by failing to provide adequate privacy, security, and confidentiality safeguards for Plaintiffs' and Class members' PII and PHI.

87.    As a direct and proximate result of Defendants' breach of contract, Plaintiffs and Class members did not receive the full benefit of the bargain, and instead received services that were less valuable than described in their contracts. Plaintiffs and Class members, therefore, were damaged in an amount at least equal to the difference in value between that which was promised and Defendants'

deficient performance.

88.    As a result of Defendants' breach of contract, Plaintiffs and Class members have suffered actual damages resulting from the exposure of their PII and PHI, and they remain at imminent risk of suffering additional damages in the future.

89.    Accordingly, Plaintiffs and Class members have been injured by Defendants' breach of contract and are entitled to damages and/or restitution in an amount to be proven at trial.

## PRAYER FOR RELIEF

Plaintiffs seek relief for himself and the proposed nationwide class as follows:

a.    Certify this case as a class action, appoint Plaintiffs as class representatives and appoint Plaintiffs' counsel to represent the classes;

b.    Find that Defendants breached their duty to safeguard and protect Plaintiffs' and the Class Members' PII and PHI which was compromised in the Data Breach;

c.    Award Plaintiffs and Class Members appropriate relief, including actual damages, punitive damages, and statutory damages;

d.    Award equitable, injunctive, declaratory relief as appropriate;

e.    Award all costs, including experts' fees and attorneys' fees, and the costs of prosecuting this action;

f.    Award pre-judgment and post-judgment interest as prescribed by law; and

g.    Grant additional legal or equitable relief as the Court may find just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury.

1
2

Dated: June 12, 2019                         **GLANCY PRONGAY & MURRAY LLP**

3
4
5
6
7
8
9
10
11

By:  *s/ Marc L. Godino*
Lionel Z. Glancy
Marc L. Godino
Danielle L. Manning
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone:  (310) 201-9150
Facsimile:  (310) 201-9160
Email:  mgodino@glancylaw.com
         info@glancylaw.com

*Attorneys for Plaintiffs*

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

373722.4